UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20266-CR-ALTONAGA/BROWN

UNITED STATES OF AMERICA

v.

ABIMEL CARABALLO,

    Defendant
_____/

**MOTION TO DISMISS COUNTS 13-23 OF THE INDICTMENT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS**

Abimel Caraballo, by and through undersigned counsel, moves the Court for an order dismissing Counts 13-23 of the Indictment because Title 8 United States Code § 1324(a)(2)(B)(iii) violates the Fifth Amendment privilege against self-incrimination, and is thereby unconstitutional.

## BACKGROUND

The Grand Jury returned a twenty-three count Indictment charging Abimel Caraballo with Counts 13-23 of the Indictment allege that Abimel Caraballo violated Title 8 United States Code, Section 1324(a)(2)(B)(iii) and Title 18, United States Code, Section 2 by

> knowingly brought into the United States an alien, as set forth in Counts 13 through 23 […] and did not upon arrival immediately bring and present such alien to an appropriate immigration officer at a designated port of entry, knowing and in reckless disregard of the fact that such alien had not received prior official authorization to come to, enter, and reside in the United States, and regardless of any official action which may later be taken with respect to such alien.

Counts 13-23 should be dismissed because Title 8 United States Code, Section 1324(a)(2)(B)(iii) violates the Self-Incrimination Clause of the Fifth Amendment, and is therefore unconstitutional.

Undersigned counsel has discussed this matter with AUSA Russ Brown who objects to this motion being granted.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTS 13-23 OF THE INDICTMENT

**I.   Counts 13-23 of the Indictment Should Be Dismissed Because 8 USC § 1324(a)(2)(B)(iii) is Unconstitutional**

### A.  Self Incrimination Clause of the Fifth Amendment

The Self-Incrimination Clause of the Fifth Amendment provides in pertinent part, "no person shall be compelled in a criminal case to be a witness against himself." The Supreme Court has been zealous to safeguard the values, which underlie the privilege, and it protects against any disclosures, which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. *Kastigar v. U. S.*, 406 U.S. 441, 445 (1972). *See also, Malloy v. Hogan*, 84 S.Ct. 1489 (1964) (holding that the American system of criminal prosecution is accusatorial, not inquisitorial, and its essential mainstay is provision of Fifth Amendment that no person shall be compelled in any criminal case to be witness against himself).

The Supreme Court has held that the constitutional rights to assistance of counsel and protection against self- incrimination "were secured for ages to come and designed to approach immortality as nearly as human institutions can approach it." *Miranda v. Arizona*, 384 U.S. 436, 442 (1966) (quoting *Cohens v. Commonwealth of Virginia*, 6

Wheat, 264, 387, 5 L.Ed. 257 (1821)). *See also Application of Gault*, 387 U.S. 1, 50 (1967)

> [o]ur Constitution guarantees that no person shall be compelled to be a witness against himself when he is threatened with deprivation of his liberty--a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom.

*Id.* at 50 (citations omitted).

Moreover, the "[Fifth Amendment] privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would *furnish a link in the chain of evidence* needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (citing *Blau v. United States*, 340 U.S. 159, 161 (1950) (holding that "[w]hether admissions by themselves would support a conviction under a statute is immaterial, [a]nswers to the questions asked by the grand jury would have furnished a link in the chain of evidence needed in a prosecution of petitioner.")) (emphasis added).

### B. The Privilege Against Self-Incrimination Can Be Claimed Outside of Criminal Court Proceedings

The Fifth Amendment privilege against self-incrimination is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed from being compelled to incriminate themselves. *Miranda v. Arizona*, 384 U.S. 436 (1966). In order to invoke the privilege it is necessary to show that the compelled disclosures will themselves confront the claimant with 'substantial

hazards of self- incrimination.' *California v. Byers*, 91 S.Ct. 1535 (1971) (citations omitted).

Furthermore, the Fifth Amendment privilege against self-incrimination "can be claimed in *any proceeding*, whether criminal or civil, administrative or judicial, investigatory or adjudicatory". *Application of Gault*, 387 U.S. 1, 47- 48 (1967); *Kastigar v. U. S.*, 406 U.S. 441, 445 (1972) (citing *Murphy v. Waterfront Comm'n, supra*, 378 U.S., at 94, (White, J., concurring); *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924); *United States v. Saline Bank*, 1 Pet. 100, 7 L.Ed. 69 (1828); c.f. *Gardner v. Broderick*, 392 U.S. 273 (1968)). (emphasis added). The Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). (holding that it is a settled view of the Supreme Court that "[t]he object of the [Fifth] Amendment [is] to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself committed a crime") (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562).

Moreover, the availability of privilege against self-incrimination does not turn upon type of proceeding in which its protection is invoked, but upon nature of statement or admission and exposure which it invites. *Application of Gault*, 387 U.S. 1, 49 (1967). *See also Kastigar v. U. S.*, 406 U.S. 441, 445 (1972) (holding that the Fifth Amendment privilege against compulsory self-incrimination "protects against *any disclosures* which witness reasonably believes could be used in criminal prosecution or could lead to other

evidence which might be so used") (quoting *Hoffman v. United States*, 341 U.S. 814, 818 (1951); *Blau v. United States*, 340 U.S. 159 (1950); *Mason v. United States*, 244 U.S. 362 (1917)) (emphasis added); *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) ("It must be considered irrelevant that the petitioner was a witness in a statutory inquiry and not a defendant in a criminal prosecution, for it has long been settled that the privilege protects witnesses in similar federal inquiries") (quoting *Malloy v. Hogan*, 378 U.S. 1, 11 (1964)).

### C. The Risk of Incrimination

The privilege against self-incrimination includes all testimony and documents that could "furnish a link in the chain of evidence." <u>Hoffman v. U.S.</u>, 341 U.S. 479, 486 (1951). *See also Hoffa v. U. S.*, 385 U.S. 293, 304 (1966) (holding that many links frequently compose chain of testimony necessary to convict any individual of a crime, and Fifth Amendment right against compulsory self- incrimination protects him against being required to furnish any one of the links against himself); *Maness v. Meyers*, 95 S.Ct. 584 (1975) (holding that the Fifth Amendment privilege against self-incrimination "is broadly construed" to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action). (emphasis added).

United States Supreme Court cases have established certain criteria for determining when the threat of self-incrimination from a disclosure statute is so offensive to the mandate of the Fifth Amendment as to render the statute unconstitutional.

In *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965), the statute at issue was the Subversive Activities Control Act of 1950, which required members of the Communist Party to register as such, thereby subjecting themselves to

possible federal criminal prosecution. The Supreme Court contrasted those registration requirements with the requirement to file tax returns upheld in *United States v. Sullivan*, 274 U.S. 259 (1927). The Court in *Albertson* noted:

> In Sullivan the questions in the income tax return were neutral on their face and directed at the public at large, but here they are directed at a highly selective group inherently suspect of criminal activities. Petitioners' claims are not asserted in an essentially non criminal and regulatory area of inquiry, *but against an inquiry in an area permeated with criminal statutes, where response to any of the form's questions in context might involve the petitioners in the admission of a crucial element of a crime*.

382 U.S. at 79, 86 S.Ct. at 199 (emphasis added).

Later United States Supreme Court cases utilized these criteria in striking down various disclosure statutes. *See, e.g., Leary v. United States*, 395 U.S. 6, 29 (1969) (registration of those who "deal in" marijuana); *Marchetti v. United States*, 390 U.S. 39 (1968) (registration of gamblers); *Grosso v. United States*, 390 U.S. 62 (1968) (registration of gamblers); and *Haynes v. United States*, 390 U.S. 85 (1968) (registration of certain firearms).

Therefore in determining applicability of privilege against self-incrimination, it is not mere time to which law must look *but substantiality of risk of incrimination*. *Marchetti v. U.S.*, 390 U.S. 39, 54 (1968) (emphasis added).

For example in *Marchetti*, the United States Supreme Court held that the privilege against self-incrimination provided an absolute defense to a federal statute requiring those involved in wagering activities to register with the Internal Revenue Service. The Court held that because there were several federal and state laws prohibiting wagering activities, and because the information from registrants was widely available to

prosecuting authorities, the registration requirements "would surely prove a significant 'link in a chain' of evidence tending to establish [a registrant's] guilt." *Marchetti,* 390 U.S. at 48, 88 S.Ct. at 703 (citation omitted); *see also Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

Moreover, the Court maintained that "[t]he central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." *Id.* 390 U.S. at 53, 88 S.Ct. at 705. (citations omitted).

In contrast, the United States Supreme Court has distinguished cases where the Fifth Amendment against self-incrimination is not applicable. In *California v. Byers*, 402 U.S. 424 (1971), the Court discussed distinctions between their previous cases and the subject case involving a California statute requiring motorist involved in accident to stop and give his name and address. The Court found that in their previous decisions, the disclosures condemned were only those extracted from a 'highly selective group inherently suspect of criminal activities' and the privilege was applied only in 'an area permeated with criminal statutes'--not in 'an essentially noncriminal and regulatory area of inquiry.' *California v. Byers*, 402 U.S. 424, 430 (1971) (quoting *Albertson v. SACB*, 382 U.S., at 79, 86 S.Ct., at 199 and *Marchetti v. United States*, 390 U.S., at 47, 88 S.Ct., at 702)).

In *California v. Byers*, 402 U.S. 424, 430-431 (1971), the Court held that the provision of California statute requiring motorist involved in accident to stop and give his name and address did not involve self-incrimination in a constitutional sense, where the

statute was essentially regulatory and noncriminal, self-reporting was indispensable, burden was on public at large, and possibility of self-incrimination was insubstantial. *See also McKune v. Lile*, 122 S.Ct. 2017, 2020-2021, 2027 (2002) (holding that the adverse consequences faced by state prisoner for refusing to make admissions required for participation in sexual abuse treatment program were not so severe as to amount to compelled self-incrimination; refusal did not extend prisoner's prison term or affect his eligibility for good time credits or parole, but rather left him subject to reduction of privileges and transfer out of unit where program was being offered).

### D. 8 USC § 1324(a)(2)(B)(iii) Violates the Fifth Amendment Privilege Against Self-Incrimination

Title 8, United States Code Section 1324(a)(2)(B)(iii) states in pertinent part:

> **(a)(2)** Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs--
>
> > **(B)** in the case of--
> >
> > **(iii)** an offense in which the alien is not *upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry*,
>
> be fined under Title 18 *and shall be imprisoned*, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

8 USC § 1324 (emphasis added).

Although the Fifth Amendment to the United States Constitution provides in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself, 8 USC § 1324(a)(2)(B)(iii) subjects to punishment any person who brings to or attempts to bring to the United States in any manner whatsoever, an alien, **and does not upon arrival immediately bring and present this alien to an appropriate immigration officer at a designated port of entry**. This is unconstitutional because it violates the Self-Incrimination Clause of the Fifth Amendment. This constitutional protection exists primarily to "assure that an individual is not compelled to produce evidence which may later be used against him as an accused in a criminal action." *Cincinnati v. Bawtenheimer*, 586 N.E.2d 1065, 1068 (Ohio 1992) (quoting *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). The Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). *See also United States v. Balsys*, 524 U.S. 666, 671-672 (holding that "if [the petitioner] could demonstrate that any testimony he might give in the deportation investigation could be used in a criminal proceeding against him brought by the Government of either the United States or one of the States, he would be entitled to invoke the privilege.") The Self-Incrimination Clause of the Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," in which the witness reasonably believes that the information sought, or

discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding. *United States v. Balsys*, 524 U.S. 666, 671-672 (quoting *Kastigar v. United States*, 406 U.S. 441, 444-445 (1972).

The disclosure of inherently illegal activity is inherently risky. <u>California v. Byers</u>, 402 U.S. 424, 431 (1971). Accordingly, the United States Supreme Court has extended the privilege against self-incrimination to encompass ***any testimony*** that ***would help prosecute the accused for a federal crime***. *Blau v. United States*, 340 U.S. 159, 161 (1950). Here 8 USC § 1324(a)(2)(B)(iii), criminally penalizes with a felony conviction and a minimum mandatory sentence those who bring to or attempts to bring to the United States in any manner whatsoever, an alien, and does not upon arrival immediately bring and present this alien to an appropriate immigration officer at a designated port of entry.

This criminal statute clearly requires one to give testimonial evidence. However, the Fifth Amendment protects the person against incrimination through compelled testimony *or other compelled acts having some testimonial character. Cincinnati v. Bawtenheimer*, 586 N.E.2d 1065, 1068 (Ohio 1992) (emphasis added). If a person did bring a person or persons to an immigration officer at a designated port of entry for presentment, knowing that the person is an alien, this clearly would be furnishing a link in the chain of evidence. This evidence could forseeably be used by authorities in a criminal prosecution. Therefore, statutorily requiring a person to bring and present someone known to be an alien to an immigration officer at a place designated as a port of entry is unconstitutional because it violates the Self-Incrimination Clause of the Fifth Amendment. *See Hoffman v. U.S.*, 341 U.S. 479, 486 (1951). *See also Hoffa v. U. S.*, 385 U.S. 293, 304 (1966) (holding that many links frequently compose chain of testimony

necessary to convict any individual of a crime, and Fifth Amendment right against compulsory self- incrimination protects him against being required to furnish any one of the links against himself). Moreover the Fifth Amendment privilege against self-incrimination "is broadly construed to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers*, 95 S.Ct. 584 (1975).

Finally the criminal statute 8 USC § 1324(a)(2)(B)(iii) would invade the Fifth Amendment's privilege against self-incrimination, because its requirement that upon arrival an alien must be immediately brought in and presented to an appropriate immigration officer at a designated port of entry, does not encompass an essentially noncriminal and regulatory area of inquiry, but "against an inquiry in an area permeated with criminal statutes", where such presentment "might involve the [presenter] in the admission of a crucial element of a crime." *See Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 79 (1965). Therefore 8 USC § 1324(a)(2)(B)(iii) must be declared unconstitutional because it violates the Self-Incrimination Clause of the Fifth Amendment.

## CONCLUSION

For the reasons stated above, and for any other reason that the Court may deem just and proper, defendant Abimel Caraballo respectfully requests that the Court dismiss Counts 13-23 of the Indictment as requested herein.

Respectfully Submitted,

s/ Martin J. Beguiristain
MARTIN J. BEGUIRISTAIN
Attorney for Defendant
Florida Bar No. 0146072
12930 SW 128th Street Ste 103
Miami, FL 33186
305-251-2302
Fax: 305-252-7392
MartinBLaw@aol.com

Certificate of Service

I HEREBY CERTIFY that on June 20, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/EMF.

s/ Martin J. Beguiristain
MARTIN J. BEGUIRISTAIN