**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-20266-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

**vs.**

**ABIMEL CARABALLO,**

    **Defendant.**
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE A-FILE AND THE INFORMATION CONTAINED THEREIN AS HEARSAY**

The United States of America, by and through the undersigned Special Assistant United

States Attorney, respectfully submits this response in opposition to Defendant Abimel Caraballo's

Motion *in Limine* to Exclude A-file and the Information Contained Therein as Hearsay.  In support,

the undersigned states as follows:

**PROCEDURAL BACKGROUND**

On May 6, 2008, the Grand Jury returned a twenty-three count Indictment against defendant

Abimel Caraballo.  Count 1 of the Indictment charged that the defendant did knowingly and willfully

combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury,

to commit an offense against the United States, that is, to encourage and induce an alien to come to,

enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming

to, entry, and residence is and will be in violation of law, in violation of Title 8, United States Code,

Section 1324(a)(1)(A)(iv); all in violation of Title 8, United States Code, Section

1324(a)(1)(A)(v)(I).  Counts 2 through 12 of the Indictment charged that the defendant did

knowingly encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), and Title 18, United States Code, Section 2.  Counts 13-23 of the Indictment charges that the defendant knowingly brought to the United States aliens and did not upon arrival immediately bring and present such aliens to an appropriate immigration officer at a designated port of entry, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, and regardless of any official action which may later be taken with respect to such aliens, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and Title 18, United States Code, Section 2.

On June 20, 2008, Caraballo filed a motion *in limine*, specifically seeking to preclude the government from introducing into evidence the alien registration files ("A-files") of the eleven aliens referenced in the defendants' Indictment.

## FACTUAL BACKGROUND

On August 7, 2007,  North Miami Police Department (NMPD) Marine Patrol Officer, Dagoberto Andollo, sat in his unmarked white Ford Explorer Patrol Car underneath the Haulover Inlet Bridge in order to observe fishing vessels enter and exit Haulover Inlet, Florida.   At approximately 11:30 a.m., Officer Andollo observed a 25 foot vessel with outboard engines, registered FL2102GE and later determined to be owned by the defendant, proceed inbound through Haulover Inlet, Florida, with several fishing rods onboard the vessel.  Officer Andollo observed the individuals on board the vessel continually looking around the inlet as they entered Haulover Inlet as though they were searching for something.  Officer Andollo noticed that the vessel was heading

in the direction of the  Haulover boat ramp, so he proceeded in that direction in his vehicle to await

for the vessel's arrival at the ramp in order to conduct a fisheries examination.

Officer Andollo arrived at the boat ramp before the operators of the defendant's vessel and

parked his Ford Explorer.  Shortly thereafter, Officer Andollo observed the defendant, Abimel

Caraballo, back down the boat ramp with his truck and trailer and begin loading the  vessel,

FL2102GE, onto his trailer.  The operators of the vessel were later identified as Anderson Lopez and

Edel Miranda.  Officer Andollo drove his truck down to the boat ramp and parked it near the boat

ramp and the defendant's truck. While moving his truck near the boat ramp, Officer Andollo noticed

that the three individuals appeared to be in a hurry to leave the boat ramp. He observed the

defendant, Abimel Caraballo, exit his truck, climb onto the boat, jump back down off the boat, and

get back into his truck.  Mr. Miranda and Mr. Lopez he observed helping to get the vessel loaded and

secured onto the boat trailer.

By the time Officer Andollo parked his vehicle near the boat ramp and approached the three

individuals, the defendant was back in his truck, Mr. Miranda was standing to the side of the boat

on the boat ramp, and Mr. Lopez was approximately waist deep in water on the boat ramp.  Officer

Andollo asked Mr. Lopez and Mr. Miranda whether they caught any fish. Mr. Lopez stated "no" and

Mr. Miranda stated "yes." While Mr. Miranda remained silent, Mr. Lopez quickly again answered

"no"apparently on behalf of Mr. Miranda and indicated the fishing was slow. Officer Andollo asked

all three individuals for identification. Mr. Lopez informed Officer Andollo that he forgot his

identification on the boat.  Officer Andollo noticed Mr. Lopez's wallet in his pocket and asked him

if his identification was in his wallet.  Mr. Lopez then reached into his pocket, pulled out his wallet,

and nervously provided Officer Andollo his identification.  Officer Andollo also asked whether anyone had a state of Florida fishing license.  The defendant, Mr. Caraballo, answered affirmatively.

When another police unit arrived on scene, Officer Andollo informed the three individuals that he was going on board the vessel to conduct a fisheries examination and asked whether he would find any fish onboard the vessel. All of the individuals remained silent and did not answer this question asked by Officer Andollo.  The vessel was still in the water with the boat chain hooked to the trailer on the boat ramp when Officer Andollo went onboard the vessel. While conducting the examination, Officer Andollo opened the cuddy cabin hatch and in plain view discovered 10 Chinese nationals (9 adults and one unaccompanied minor) and 1 Guyanese national.  The NMPD officer detained all of the persons onboard the vessel and notified Immigration and Customs Enforcement (ICE) and US Border Patrol (USBP).  USBP took custody of the 10 Chinese Nationals and 1 Guyanese National.  ICE Agents took custody of the operators, Anderson Lopez and Edel Miranda, and the defendant.  The defendant, Mr. Lopez, and Mr. Miranda were read their Miranda rights and each elected to answer questions.

Officer Andollo concluded his fisheries examination of the vessel and issued a ticket to Mr. Lopez for not having lifejackets onboard the vessel and not having a fishing license. He also issued a violation to Mr. Miranda for not having a fishing license..

The migrants ultimately were transported to the Border Patrol Station in Pembroke Pines, Florida, for processing, the purpose of which was to determine their immigration status.  Once at the station, the adult migrants (10 total)  were individually interviewed by U.S. Border Patrol officers and ICE agents.  The information provided by the migrants, which was biographical in nature, was given in response to routine, objective questions that are posed to all aliens entering the United

States, regardless of whether their entry occurred at a designated port of entry or whether they might be subject to criminal prosecution as a result of their entry.  This information was then reduced to writing and incorporated within each individual alien's A-file, which, in turn, is maintained by the National Records Center as a matter of regular business course.

Additionally, the ten adults migrants were subsequently arrested with material witness complaints and deposed in accordance with F.R.C.P. 15 in the criminal case against Miranda and Lopez. Nine Chinese nationals and 1 Guyanese national were deported. One Chinese national was paroled on bond into the United States on February 7, 2008.

## LAW AND ARGUMENT

Caraballo now insists the aforementioned A-files are inadmissible, claiming they are hearsay and not the subject of any exception identified within Federal Rule of Evidence 803.  He further maintains the proposed presentation of this evidence is contrary to the Confrontation Clause, as explained in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Simply put, both claims are without merit, and Caraballo's motion should be denied.

### A.    Information contained within the A-files is non-testimonial evidence and thus is not subject to confrontation

In *United States v. Cantellano*, 430 F.3d 1142, (11th Cir. 2005), the Eleventh Circuit considered for the first time whether, under *Crawford*, a warrant of deportation, which was part of Cantellano's immigration records, was testimonial evidence subject to confrontation at trial.  The record shows that Cantellano was charged with one count of illegal re-entry, in violation of Title 8, United States Code, Section 1326(a).  *Cantellano*, 430 F.3d at 1143.  During trial, an immigration enforcement agent testified  that Cantellano was a Mexican citizen, who previously had been deported from the

United States and then had re-entered without the requisite permission. *Id.* In support of this assertion, the government offered through this same witness a warrant of deportation showing Cantellano's departure from the United States on a specified date and at a specified location. *Id.* The government laid the foundation for admission of the warrant through this witness despite the fact that "he did not complete, sign, or witness the completion or signing of the warrant. The same official also admitted he did not receive the warrant until he requested Cantellano's immigration records nearly one year after the warrant was completed." *Id.*

Cantellano objected to the introduction of the warrant, claiming, in part, that its admission would violate his right to confrontation under the Sixth amendment because the warrant included testimonial evidence and he had not been afforded an opportunity to cross-examine the person who witnessed him leave the country. *Id.* at 1143-44. The district court overruled his objection, and he ultimately was found guilty and sentenced to 100 months' imprisonment. *Id.* at 1144.

On appeal, Cantellano re-stated that admission of the warrant violated his right to confrontation under *Crawford*. *Id.* Upon review, the Eleventh Circuit, noting as follows, first addressed whether the warrant was testimonial or non-testimonial:

> Testimonial evidence is not admissible without confrontation unless the testifier is unavailable and the defendant has had an opportunity for cross-examination. In contrast, non-testimonial evidence is not subject to confrontation. Although the Court in *Crawford* declined to give a comprehensive definition of "testimonial" evidence, non-testimonial evidence fails to raise the same concerns as testimonial evidence. Because non-testimonial evidence is not prepared in the shadow of criminal proceedings, it lacks the accusatory character of testimony. Non-testimonial evidence is not inherently adversarial.

*Id.* at 1145 (internal citations omitted). Given this defined distinction, the Court determined Cantellano's warrant of deportation did not implicate adversarial concerns as it was "recorded

routinely and not in preparation for a criminal trial." *Id.* Accordingly, the warrant of deportation was deemed properly admissible because it was non-testimonial in nature and not subject to confrontation. *Id. See United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005) (warrant of deportation was non-testimonial because it was not made in anticipation of litigation and because it is simply a routine, objective, cataloging of an unambiguous factual matter); *see United States v Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006) (warrant of deportation does not constitute testimonial hearsay under *Crawford*); *see also United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (stating generally that documents in a defendant's immigration file are analogous to non-testimonial business records).

In the case at hand, the relevant portions of the A-files, that is, the information outlining each alien's biographical information, resulted from standard, objective questions that are posed to all aliens entering the United States. The presentation of these questions was routine and did not hinge upon the likelihood of subsequent, related criminal proceedings. As such, they were neither inherently adversarial, nor testimonial, and thus are not subject to confrontation.

**B.    Information contained within the A-files is admissible hearsay pursuant to Federal Rule of Evidence 803(8)**

The Eleventh Circuit has joined other circuits in clearly holding that "admission of routinely and mechanically kept I.N.S. records" does not violate the public records exception to the hearsay rule. *United States v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994); *see United States v. Quezada*, 754 F.2d 1190, 1193 (5th Cir. 1985) (admission of warrant of deportation did not violate Rule 803(8)(B) as the rule did not apply to recording routine, objective observations made as part of the everyday function of the preparing official or agency); *see also United States v. Hernandez-*

*Rojas*, 617 F.2d 533, 535 (9th Cir. 1980) (notations on a warrant of deportation did not violate 803(8)(B)).

Given the above, unambiguous case law, the government is not precluded from introducing the routinely kept A-files, which are admissible hearsay pursuant to Federal Rule of Evidence 803(8).

## CONCLUSION

Based on the foregoing reasons, the United States respectfully requests that the Court deny Defendant Abimel Caraballo's Motion *in Limine* to Exclude A-file and the Information Contained Therein as Hearsay.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: s/ Russ Brown
Special Assistant
United States Attorney
Court ID No. A5501216
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9279
Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/Russ Brown
Special Assistant United States Attorney

8