UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20266-CR-ALTONAGA

UNITED STATES OF AMERICA

v.

ABIMEL CARABALLO,

_____Defendant._____/

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION TO  SUPPRESS EVIDENCE

The United States of America, by and through the undersigned Special Assistant United States Attorney, respectfully submits this response in opposition to Defendant Abimel Caraballo's motion to suppress evidence.  In support, the undersigned states as follows:

## FACTUAL BACKGROUND

On August 7, 2007,  North Miami Police Department (NMPD) Marine Patrol Officer, Dagoberto Andollo, sat in his unmarked white Ford Explorer Patrol Car underneath the Haulover Inlet Bridge in order to observe fishing vessels enter and exit Haulover Inlet, Florida.   At approximately 1130 a.m., Officer Andollo observed a 25 foot vessel with outboard engines, registered FL2102GE and later determined to be owned by the defendant, proceed inbound through Haulover Inlet, Florida, with several fishing rods onboard the vessel.  Officer Andollo observed the individuals on board the vessel continually looking around the inlet as they entered Haulover Inlet as though they were searching for something.  Officer Andollo noticed that the vessel was heading in the direction of the Haulover boat ramp, so he proceeded in that direction in his vehicle to await for the vessel's arrival

at the ramp in order to conduct a fisheries examination.

Officer Andollo arrived at the boat ramp before the operators of the defendant's vessel and parked his Ford Explorer.  Shortly thereafter, Officer Andollo observed the defendant, Abimel Caraballo, back down the boat ramp with his truck and trailer and begin loading the  vessel, FL2102GE, onto his trailer.  The operators of the vessel were later identified as Anderson Lopez and Edel Miranda.  Officer Andollo drove his truck down to the boat ramp and parked it near the boat ramp and the defendant's truck. While moving his truck near the boat ramp, Officer Andollo noticed that the three individuals appeared to be in a hurry to leave the boat ramp. He observed the defendant, Abimel Caraballo, exit his truck, climb onto the boat, jump back down off the boat, and get back into his truck.  Mr. Miranda and Mr. Lopez he observed helping to get the vessel loaded and secured onto the boat trailer.

By the time Officer Andollo parked his vehicle near the boat ramp and approached the three individuals, the defendant was back in his truck, Mr. Miranda was standing to the side of the boat on the boat ramp, and Mr. Lopez was approximately waist deep in water on the boat ramp.  Officer Andollo asked Mr. Lopez and Mr. Miranda whether they caught any fish. Mr. Lopez stated "no" and Mr. Miranda stated "yes." While Mr. Miranda remained silent, Mr. Lopez quickly again answered "no"apparently on behalf of Mr. Miranda and indicated the fishing was slow. Officer Andollo asked all three individuals for identification. Mr. Lopez informed Officer Andollo that he forgot his identification on the boat.  Officer Andollo noticed Mr. Lopez's wallet in his pocket and asked him if his identification was in his wallet.  Mr. Lopez then reached into his pocket, pulled out his wallet, and nervously provided Officer Andollo his identification.  Officer Andollo also asked whether anyone had a state of Florida fishing license.  The defendant, Mr. Caraballo, answered affirmatively.

2

When another police unit arrived on scene, Officer Andollo informed the three individuals that he was going on board the vessel to conduct a fisheries examination and asked whether he would find any fish onboard the vessel. All of the individuals remained silent and did not answer this question asked by Officer Andollo.  The vessel was still in the water with the boat chain hooked to the trailer on the boat ramp when Officer Andollo went onboard the vessel.  While conducting the examination, Officer Andollo opened the cuddy cabin hatch and in plain view discovered 10 Chinese nationals (9 adults and one unaccompanied minor) and 1 Guyanese national.  The NMPD officer detained all of the persons onboard the vessel and notified Immigration and Customs Enforcement (ICE) and US Border Patrol (USBP).  USBP took custody of the 10 Chinese Nationals and 1 Guyanese National.  ICE Agents took custody of the operators, Anderson Lopez and Edel Miranda, and the defendant.  The defendant, Mr. Lopez, and Mr. Miranda were read their <u>Miranda</u> rights and each elected to answer questions.

Officer Andollo concluded his fisheries examination of the vessel and issued a ticket to Mr. Lopez for not having lifejackets onboard the vessel and not having a fishing license. He also issued a violation to Mr. Miranda for not having a fishing license.

## MEMORANDUM OF LAW

### AUTHORITY TO SEARCH THE VESSEL AND REASONABLENESS OF SEARCH

Florida Statute Title XXVIII Chapter 370 lists Florida's saltwater fisheries rules and the penalties for violating those rules. Within Chapter 370, Section 370.021(8) (2006) describes the powers of officers enforcing these rules.  Florida Statute Annotated Section 370.021(8)(a) states:

> Law enforcement officers of the commission are constituted law enforcement officers of this state with full power to investigate and arrest for any violation of the laws of this state and the rules of the commission under their jurisdiction. The general laws

applicable to arrests by peace officers of this state shall also be applicable to law enforcement officers of the commission. ("...") Such law enforcement officers have the authority, without warrant, to board, inspect, and search any boat, fishing appliance, storage or processing plant, fishhouse, spongehouse, oysterhouse, or other warehouse, building, or vehicle engaged in transporting or storing any fish or fishery products. Such authority to search and inspect without a search warrant is limited to those cases in which such law enforcement officers have reason to believe that fish or any saltwater products are taken or kept for sale, barter, transportation, or other purposes in violation of laws or rules promulgated under this law.

The commission is defined as the Fish and Wildlife Conservation Commission. Fla. Stat. Ann. § 370.01(6). Further, Florida Statute Annotated Section 370.021(8)(b) reads:

The Legislature finds that the checking and inspection of saltwater products aboard vessels is critical to good fishery management and conservation and that, because almost all saltwater products are either iced or cooled in closed areas or containers, the enforcement of seasons, size limits, and bag limits can only be effective when inspection of saltwater products so stored is immediate and routine. Therefore, in addition to the authority granted in paragraph (a), a law enforcement officer of the commission who has probable cause to believe that the vessel has been used for fishing prior to the inspection shall have full authority to open and inspect all containers or areas where saltwater products are normally kept aboard vessels while such vessels are on the water, such as refrigerated or iced locations, coolers, fish boxes, and bait wells, but specifically excluding such containers that are located in sleeping or living areas of the vessel.

The rules of the commission shall be enforced by any law enforcement officer certified pursuant to s. 943.13. See Fla. Stat. Ann. § 370.028. Section 943.13 lists the state of Florida's minimum qualifications for employment or appointment as a law enforcement person.

Officer Andollo observed Mr. Miranda and Mr. Lopez enter Haulover Inlet, saw fishing poles on their vessel, and observed them continually looking around the inlet as they proceeded into Haulover Inlet. At the boat ramp, he observed the defendant, Mr. Miranda, and Mr. Lopez attempt to hurriedly trailer the vessel and leave, conflicting statements as to whether Mr. Miranda

and Mr. Lopez had caught any fish, and Mr. Lopez's inaccurate statement concerning the location of his identification and his nervous nature in Officer Andollo's presence.  Additionally, the only individual who indicated that he had a fishing permit was the defendant, Mr. Caraballo, who had not actually been out on the boat fishing. Based on these observations, Officer Andollo informed the individuals that he was going to conduct a fisheries examination and asked whether he would find any fish on board the vessel to which he did not receive an answer.

Based on the facts articulated above, Officer Andollo had reason to believe that Mr. Miranda and Mr. Lopez may have violated Florida's Saltwater rules and probable cause that the vessel had been engaged in fishing prior to his inspection.  Based on Florida Statute Annotated Sections 370.021(8)(a) and (b) and 370.028, Officer Andollo had authority to search the vessel without a warrant looking for violations of Florida's Saltwater rules. While conducting the fisheries examination, Officer Andollo opened up a cuddy cabin hatch and observed the 11 foreign nationals immediately upon opening the hatch.  He concluded his examination by issuing violations to Mr. Miranda and Mr. Lopez.

Federal law controls the admissibility of the products of a state's search and seizure of evidence.  *United States v. Clay*, 355 F.3d 1281, 1283 (11th Cir. 2004).  As correctly stated in defense counsel's motion, the Eleventh Circuit states that reasonable suspicion and probable cause turn on the totality of the circumstances. *United States v. Reeh*, 780 F.2d 1541 (11th Cir. 1986). In *United States v. Lopez*, 761 F.2d 632 (11th Cir. 1985), the court stated that the a person's expectation of privacy on a boat may be severely diminished as compared to expectations of privacy on land and that neither the captain nor crew has a legitimate expectation of privacy in a common area onboard a vessel.

5

Based on Officer Andollo's observations stated above, that he discovered the foreign nationals in plain view while conducting a lawful state examination, and the controlling federal case law, the search of the vessel was reasonable and lawful under federal law standards.

### DEFENDANT'S POST-MIRANDA STATEMENTS WERE VOLUNTARY

It is well-settled that a defendant's post-arrest statements in response to official interrogation may be admitted into evidence where the government demonstrates, by a preponderance of the evidence, that the defendant was advised of his Miranda rights, understood them, and waived them knowingly and voluntarily.  Edwards v. Arizona, 451 U.S. 477, 483-84 ( 1981); Miller v. Dugger, 838 F.2d 1530, 1538 (11th Cir.), cert. denied, 486 U.S. 1061 (1988).  Waiver is determined based upon the totality of the circumstances, with factors such as the defendant's back-ground, experience, and conduct germane to the inquiry.  Miller, 838 F.2d at 1539; Edwards, 451 U.S. at 482.  Ordinarily, however, once Miranda warnings have been administered, courts may presume that the defendant made a knowingly and voluntary waiver where he responds to questioning and does not invoke his right to counsel or to remain silent.  Cape v. Francis, 741 F.2d 1287, 1298 (11th Cir. 1984).

Here, under the totality of the circumstances, the defendant's statements  in this case were voluntary.  No force or threat of violence was used, and Caraballo, Lopez, and Miranda were verbally advised of their Miranda rights in Spanish and signed a written waiver of rights form in their native language.  Additionally, the defendant, has no standing to assert that the Miranda rights of Mr. Lopez and Mr. Miranda were violated as the right is specific to the individual claiming a violation of his or her Miranda rights.  *Miranda v. Arizona*, 384 U.S. 436 (1966).  Neither Mr. Miranda nor Mr. Lopez asserted a violation of their Miranda rights.

## CONCLUSION

Based on the foregoing reasons, the United States respectfully requests that the Court deny

Defendant Abimel Caraballo's Motion *to Suppress*.

<div style="margin-left:40%">

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

</div>

By:      s/ Russ Brown _____
         Special Assistant
         United States Attorney
         Court ID No. A5501216
         99 Northeast 4th Street
         Miami, Florida 33132-2111
         Tel: (305) 961-9279
         Fax: (305) 530-7976

_____

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 3, 2008, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

_____      s/Russ Brown _____
                       Special Assistant United States Attorney

7