UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20266-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

ABIMEL CARABALLO

   **Defendant.**
_____/

### GOVERNMENT'S NOTICE TO INTRODUCE 404(b) EVIDENCE AT TRIAL

The United States of America, by and through the undersigned Special Assistant United States Attorney, hereby files this notice to introduce the following 404(b) evidence at trial and states as follows:

### 404(b) EVIDENCE

In June 2007, Caraballo's vessel, FL2102GE, was used to smuggle eight Chinese nationals from the Bahamas to the United States. Caraballo, Lopez, and "Guardino" took Caraballo's vessel, FL2102GE, to the Haulover boat ramp to launch it. Lopez and "Guardino" then drove the vessel to Rolando Guedez's residence and Caraballo left the boat ramp with his truck an trailer.  Caraballo introduced Lopez to Guedez.  Upon arrival at Rolando Guedez's house, Guedez boarded the vessel and drove the vessel to the Bahamas in order to show Lopez and "Guardino" the route to take to the Bahamas and how to operate the vessel.  Lopez, Guedez, and "Guardino" stayed the night in Freeport, Bahamas, at the Lucayan Marina Hotel. Early the next morning, Lopez, Guedez, and "Guardino" loaded eight Chinese nationals onto Caraballo's vessel.  Lopez and Guardino drove the vessel and the eight Chinese nationals back to the United States and Guedez flew back on an airplane

from the Bahamas to Florida. Lopez and Guardino arrived in mid-afternoon back in the United States at Guedez's house. Guedez was already back and waiting on Lopez and Guardino when they arrived. The eight Chinese nationals stayed at Guedez's residence until they were later picked up and driven to an unknown hotel. Miranda helped drive the Chinese nationals to the hotel. After the Chinese nationals were dropped off at Guedez's home, Lopez drove Caraballo's vessel back to the Haulover boat ramp where Caraballo met him and loaded the vessel back onto his trailer. Caraballo and Lopez towed the vessel using Caraballo's truck to Caraballo's house near the Dolphin Mall. Caraballo and Lopez dropped off the trailer and vessel and Caraballo took Lopez to Guardino's house to pick up his vehicle. Lopez and Caraballo returned that evening to "Guardino's" residence where Lopez was paid $3800 for this trip and Caraballo was paid $25,000 for this smuggling venture.

On July 19, 2007, at approximately 9 p.m., S/A Mark Sample conducted a dockside boarding of Caraballo's vessel, FL2102GE, at Haulover boat ramp. Officer Dagoberto Andollo of the North Miami Police Department assisted in the boarding. Caraballo, Ariel Prieto-Rodriguez, and Gardino Martinez Mesa were on board Caraballo's vessel. Caraballo advised that they were testing the boat because the lower units on the engine had just been replaced. Officers concluded their boarding and later thirteen Chinese nationals were seen by Miranda and Lopez at Caraballo's house after a successful smuggling venture was undertaken to the Bahamas after the officers concluded the dockside boarding. Miranda was recruited at Caraballo's house during this time to make the August 2007 smuggling trip.

## ARGUMENT

Caraballo, Miranda, and Lopez have smuggled or attempted to smuggle Chinese nationals into the Untied States from the Bahamas on at least one occasion prior to the August 7, 2007,

2

incident. Because this evidence explains, *inter alia*, how and why Caraballo, Miranda, and Lopez were working together, it is admissible as intrinsic to the offense charged or, alternatively, as 404(b) evidence.

## STATEMENT OF FACTS AND MEMORANDUM OF LAW

### I.     Facts

On August 7, 2007, North Miami Police Department (NMPD) Marine Patrol Officer, Dagoberto Andollo, sat in his unmarked white Ford Explorer Patrol Car underneath the Haulover Inlet Bridge in order to observe fishing vessels enter and exit Haulover Inlet, Florida. At approximately 1130 a.m., Officer Andollo observed a 25 foot vessel with outboard engines, registered FL2102GE and later determined to be owned by the defendant, proceed inbound through Haulover Inlet, Florida, with several fishing rods onboard the vessel. Officer Andollo observed the individuals on board the vessel continually looking around the inlet as they entered Haulover Inlet as though they were searching for something. Officer Andollo noticed that the vessel was heading in the direction of the Haulover boat ramp, so he proceeded in that direction in his vehicle to await for the vessel's arrival at the ramp in order to conduct a fisheries examination.

Officer Andollo arrived at the boat ramp before the operators of the defendant's vessel and parked his Ford Explorer. Shortly thereafter, Officer Andollo observed the defendant, Abimel Caraballo, back down the boat ramp with his truck and trailer and begin loading the vessel, FL2102GE, onto his trailer. The operators of the vessel were later identified as Anderson Lopez and Edel Miranda. Officer Andollo drove his truck down to the boat ramp and parked it near the boat ramp and the defendant's truck. While moving his truck near the boat ramp, Officer Andollo noticed that the three individuals appeared to be in a hurry to leave the boat ramp. He observed the

defendant, Abimel Caraballo, exit his truck, climb onto the boat, jump back down off the boat, and get back into his truck. Mr. Miranda and Mr. Lopez he observed helping to get the vessel loaded and secured onto the boat trailer.

By the time Officer Andollo parked his vehicle near the boat ramp and approached the three individuals, the defendant was back in his truck, Mr. Miranda was standing to the side of the boat on the boat ramp, and Mr. Lopez was approximately waist deep in water on the boat ramp. Officer Andollo asked Mr. Lopez and Mr. Miranda whether they caught any fish. Mr. Lopez stated "no" and Mr. Miranda stated "yes." While Mr. Miranda remained silent, Mr. Lopez quickly again answered "no" apparently on behalf of Mr. Miranda and indicated the fishing was slow. Officer Andollo asked all three individuals for identification. Mr. Lopez informed Officer Andollo that he forgot his identification on the boat. Officer Andollo noticed Mr. Lopez's wallet in his pocket and asked him if his identification was in his wallet. Mr. Lopez then reached into his pocket, pulled out his wallet, and nervously provided Officer Andollo his identification. Officer Andollo also asked whether anyone had a state of Florida fishing license. The defendant, Mr. Caraballo, answered affirmatively.

When another police unit arrived on scene, Officer Andollo informed the three individuals that he was going on board the vessel to conduct a fisheries examination and asked whether he would find any fish onboard the vessel. All of the individuals remained silent and did not answer this question asked by Officer Andollo. The vessel was still in the water with the boat chain hooked to the trailer on the boat ramp when Officer Andollo went onboard the vessel. While conducting the examination, Officer Andollo opened the cuddy cabin hatch and in plain view discovered 10 Chinese nationals (9 adults and one unaccompanied minor) and 1 Guyanese national. The NMPD officer detained all of the persons onboard the vessel and notified Immigration and Customs Enforcement (ICE) and US Border Patrol (USBP). USBP took custody of the 10 Chinese Nationals and 1

Guyanese National. ICE Agents took custody of the operators, Anderson Lopez and Edel Miranda, and the defendant. The defendant, Mr. Lopez, and Mr. Miranda were read their <u>Miranda</u> rights and each elected to answer questions.

Officer Andollo concluded his fisheries examination of the vessel and issued a ticket to Mr. Lopez for not having lifejackets onboard the vessel and not having a fishing license. He also issued a violation to Mr. Miranda for not having a fishing license.

Mr. Lopez and Mr. Miranda were indicted for violations of Title 8, United States Code, Section 1324, pled guilty, were sentenced and agreed to cooperate as witnesses against Mr. Caraballo. The defendant was indicted on May 6, 2008, with charges currently before the Court.

**II.     Memorandum of Law**

In the Eleventh Circuit, evidence is admissible as intrinsic to the offense charged if it is inextricably intertwined or necessary to complete the story:

> Evidence of criminal activity other than the charged offense is not considered extrinsic within the proscription of Rule 404(b) of the Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, *United States v. Kloock*, 652 F.2d 492, 494 (5th Cir. 1981), if it was inextricably intertwined with the evidence regarding the charged offense, *United States v. Killian*, 639 F.2d 206, 211 (5th Cir. 1981), *cert. denied*, 451 U.S. 1021, 101 S. Ct. 3014, 69 L. Ed. 2d 394 (1981), or if it is necessary to complete the story of the crime of the trial, *United States v. Wilson*, 578 F.2d 67, 72-73 (5th Cir. 1978).

*United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983). Stated somewhat differently, "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Because

such evidence is not extrinsic to the offense charged, the Court need not conduct a Rule 404(b) analysis. *United States v. Williford*, 764 F.3d 1493, 1499 (11th Cir. 1985).

The testimony of the alien smuggling ventures involving Caraballo, Lopez, and Miranda is essential to complete the story of the crime at trial. Evidence of the prior alien smuggling ventures explains, *inter alia*, how Caraballo, Lopez, and Miranda met each other, why Caraballo was at the Haulover boat ramp on August 7, 2007, the roles each member of the conspiracy played, and how the co-conspirators made arrangements to pick up the Chinese nationals from the Bahamas. In short, evidence of the prior alien smuggling ventures involving Caraballo and the others "pertain[s] to the chain of events explaining the context, motive and set up of the crime, is . . . linked in time and circumstances with the charged crime, . . . forms an integral and natural part of an account of the crime, [and] . . . is necessary to complete the story of the crime for the jury." *McLean*, 138 F.3d at 1403.

The Eleventh Circuit has upheld admission of this type of evidence in similar circumstances. For example, in *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992), the defendant was charged with running a large drug smuggling conspiracy. The court upheld the introduction of evidence concerning Lehder's earlier drug-smuggling activities, which began four years before the charged offense and involved many of the same people, because such evidence explained "the roles and motives of the various co-conspirators" during the charged conspiracy. *Id*. at 1516. Similarly, in *United States v. Costa*, 691 F.2d 1358 (11th Cir. 1982) (*per curiam*), the court held that Costa's prior cocaine deals were inextricably intertwined with the charged cocaine conspiracy. The prior deals established why Costa's co-defendant, who testified for the government at trial, had sought out

6

the defendant as a source of supply in the charged conspiracy. *Id*. at 1360-61.[1]

### III. The Testimony Regarding Previous Alien Smuggling Ventures is Admissible 404(b) Evidence

In the alternative, if the Court concludes that the government's evidence is extrinsic to the charged offense, then the evidence would remain admissible to establish the defendants' intent under Fed. R. Evid. 404(b). Extrinsic evidence of a bad act is admissible if (1) the act is relevant to an issue other than character, (2) the jury could find that the defendant committed the bad act, and (3) the probative value of the act is not substantially outweighed by its prejudicial effect. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citations omitted); *United States v. Giordano*, 261 F.3d 1134, 1140 (11th Cir. 2001).

The evidence here meets this test. First, the evidence is relevant to an issue other than character, namely, Caraballo's intent, motive, and knowledge. Second, because this evidence will be presented through the testimony of one or more cooperating co-defendants, the jury will be able to find that Caraballo committed, or attempted to commit, these crimes. Third, this evidence will not result in unfair prejudice.

As to the possibility of unfair prejudice, the Eleventh Circuit has explained:

> Whether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense. Factors to be considered include the strength of the Government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the

---

[1] The Second Circuit considered similar facts, and reached a similar conclusion, in *United States v. Williams*, 205 F.3d 23 (2d Cir. 2000). Williams was convicted of importing cocaine with the assistance of two others. The court upheld the admission of evidence that Williams had committed marijuana deals and credit card fraud with the same two co-conspirators, and that, at one point, Williams and one of the co-conspirators had framed the third for assault. This evidence would "inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." *Id*. at 33-34. *See also United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995) (affirming, in a fraud case alleging a scheme to artificially boost real estate values, the admission of testimony establishing that "[t]he charged offenses were not isolated acts, but rather, were part of a series of transactions involving the same principal actors, in the same roles, employing the same *modus operandi*").

>extrinsic and charged offenses and whether it appeared at the commencement of trial
>that the defendant would contest the issue of intent.

*United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987).  Moreover, the balance of whether the probative value outweighs unfair prejudice should be struck in favor of admissibility.  *See United States v. Simpkins*, 240 F. App'x 334 (11th Cir. 2007) (citing *United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir.2001)).  A district court may limit the prejudicial value of evidence by giving a limiting instruction to the jury.  *See United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir.1990).

Here, the government expects Caraballo to mount a "mere presence" or innocent owner defense and argue that he did not participate in any smuggling venture, but rather that he was just trying to sell his boat and did not have any knowledge of the smuggling venture.  Hence, the case will likely turn entirely on intent.  Much of the government's evidence will be circumstantial.  Where other evidence of intent is weaker, the probative value of any extrinsic acts is correspondingly greater.

As to the similarity of the charged offense and the defendants' other conduct, "when other crimes evidence goes to intent rather than identity, a lesser degree of similarity between the charged crime and the uncharged crime is required."  *United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995).  Indeed, "[w]hile the strength of the government's case regarding intent is important in comparing probative value and prejudice, '[t]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice.'" *Id.*

Here, however, the crimes are extremely similar: the prior alien smuggling ventures are substantially similar to the August 7, 2007, smuggling venture.  For example, as in the August 7, 2007 smuggling venture, Caraballo transports his boat with his truck and trailer to Haulover boat ramp, puts the boat in the water, and then later returns to retrieve his vessel using his truck and trailer

8

after each successful venture. Moreover, all of the crimes took place near the time of the August 7, 2007, smuggling venture. In addition, the evidence of the prior alien smuggling ventures explains how and why Caraballo became involved in the August 7, 2007, alien smuggling venture. Consequently, the evidence has substantial probative value. In short, the government should be allowed to present evidence regarding the defendants' past crimes.

**IV.    Conclusion**

For the forgoing reasons, the government respectfully requests that the Court allow the government to present evidence of Caraballo's prior alien smuggling activities.

Respectfully submitted,<br>
R. ALEXANDER ACOSTA<br>
UNITED STATES ATTORNEY

By:    s/ Russ Brown
       Special Assistant
       United States Attorney
       Court ID No. A5501216
       99 Northeast 4th Street
       Miami, Florida 33132-2111
       Tel: (305) 961-9279
       Fax: (305) 530-7976

## CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on July 11, 2008, I electronically filed the foregoing document onto the Court's CM/ECF system.

s/ Russ Brown
Special Assistant United States Attorney